UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS KUDER,

                              Plaintiff,

                                                                           DECISION AND ORDER

                                                                            12-CV-6409L

                              v.

CITY OF ROCHESTER,
SUPERVISOR CHARLES LUNDY,
COMMISSIONER PAUL HOLOHAN,

                              Defendants.
_____

      Plaintiff Dennis Kuder ("Kuder"), an employee of the City of Rochester's (the "City") Department of Environmental Services ("DES"), commenced the instant action against the City, Supervisor Charles Lundy ("Lundy"), and DES Commissioner Paul Holohan ("Holohan") pursuant to 42 U.S.C. §1983.[1] Kuder, who was employed by the DES in an unspecified capacity, alleges that the defendants violated his rights under the Fourteenth Amendment by subjecting him to unlawful discrimination on the basis of age and disability, retaliated against him on the basis of his engagement in constitutionally-protected speech in violation the First Amendment, and maintained a pattern or practice whereby his constitutional rights were violated.

      Defendants now move to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. Proc. 8 and 12(b)(6). (Dkt. #5). For the following reasons, defendants' motion is granted.

---

[1] Although plaintiff is presently proceeding *pro se* due to the withdrawal of his attorney, the Court notes that the pending motion to dismiss was fully briefed by an associate in the office of plaintiff's former counsel, prior to her withdrawal.

**FACTS**

Plaintiff was initially hired by the DES in 1988. Plaintiff alleges that in 2007, when he was approximately 41 years old, he suffered work-related knee and rotator cuff injuries which impaired his ability to perform major life activities, including working, and that the defendants thereafter regarded him as disabled.

In September 2008, plaintiff complained to his supervisor, Lundy, that he believed he was being subjected to disparate treatment because of his age and disability. Specifically, plaintiff complained that dispatchers were ignoring his dispatches, and that plaintiff's coworkers were permitted to use profanity over the dispatch system and in conversations with one another with impunity, while plaintiff was reprimanded for using far less objectionable language, such as the word "idiot."

Plaintiff alleges that after he complained to Lundy about disparate treatment, he was harassed by a coworker, who on one occasion yelled "suck my dick" at plaintiff, over and over, in the presence of coworkers. Plaintiff complained about this conduct to Lundy, but alleges that no investigation of the incident was made and no disciplinary action was taken. Plaintiff contends that during and after this time, the dispatchers continued to disregard his dispatches, and that he was held to a higher standard of conduct than younger, non-disabled employees. Specifically, plaintiff describes favorable treatment given to Kevin Walker, a younger, non-disabled employee and the object of plaintiff's harassment complaint, who was permitted to leave trash in his truck without being disciplined, and to go home early after a "truck failure," while plaintiff was required to follow DES policy in such circumstances, which mandated cleaning out trucks at the end of the day, following reporting procedures and returning to duty in the event of an equipment failure. Plaintiff also claims that another supervisor, Bill Cole, ordered him to illegally dispose of garbage and that

when plaintiff refused, he was required to submit to a random drug test in retaliation, and was thereafter terminated.[2]

In November 2010, plaintiff's employment with DES was terminated. Plaintiff alleges that his termination occurred just two months before his twenty-year anniversary with DES, at which time his pension benefits would have increased by $300.00 per month.[3]

Plaintiff alleges that his performance was above average throughout his employment, and claims that his termination occurred in retaliation for his complaints of discrimination and/or refusal to engage in an illegal task as directed by a DES supervisor.

## DISCUSSION

**I.  Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the court accepts all allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 89-90 (2d Cir. 2004). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*

---

[2] Plaintiff does not allege what reason, if any, he was given for the termination of his employment. Although the timeline recited in the complaint suggests that plaintiff's employment was terminated immediately after the random drug test was administered, plaintiff alleges no causal relationship between these two events. Although defendants urge the Court to "read between the lines" of the complaint and conclude that plaintiff's termination was the result of a failed drug test, the Court is constrained to construe all of the alleged facts in plaintiff's favor and accept them as true for purposes of this motion. As such, the Court will not engage in any speculation concerning subjects not addressed by the complaint. In any event, the Court's concern is not with the reasons the plaintiff was given for his termination, but with whether plaintiff has plausibly stated a claim that his termination was discriminatory and/or retaliatory.

[3] Although plaintiff had commenced working for DES in 1988, his tenure was reduced by two years and two months due to an extended medical leave.

when plaintiff refused, he was required to submit to a random drug test in retaliation, and was thereafter terminated.[2]

In November 2010, plaintiff's employment with DES was terminated. Plaintiff alleges that his termination occurred just two months before his twenty-year anniversary with DES, at which time his pension benefits would have increased by $300.00 per month.[3]

Plaintiff alleges that his performance was above average throughout his employment, and claims that his termination occurred in retaliation for his complaints of discrimination and/or refusal to engage in an illegal task as directed by a DES supervisor.

## DISCUSSION

**I.  Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the court accepts all allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 89-90 (2d Cir. 2004). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*

---

[2] Plaintiff does not allege what reason, if any, he was given for the termination of his employment. Although the timeline recited in the complaint suggests that plaintiff's employment was terminated immediately after the random drug test was administered, plaintiff alleges no causal relationship between these two events. Although defendants urge the Court to "read between the lines" of the complaint and conclude that plaintiff's termination was the result of a failed drug test, the Court is constrained to construe all of the alleged facts in plaintiff's favor and accept them as true for purposes of this motion. As such, the Court will not engage in any speculation concerning subjects not addressed by the complaint. In any event, the Court's concern is not with the reasons the plaintiff was given for his termination, but with whether plaintiff has plausibly stated a claim that his termination was discriminatory and/or retaliatory.

[3] Although plaintiff had commenced working for DES in 1988, his tenure was reduced by two years and two months due to an extended medical leave.

*v. Twombly*, 550 U.S. 544, 555 (2007). Where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," his complaint must be dismissed. *Id.*, 550 U.S. 550 at 570.

**II.     Kuder's First Amendment Retaliation Claim**

Initially, Kuder claims that he was terminated in violation of the First Amendment pursuant to Section 1983, in retaliation for complaining about age and disability-based discrimination and/or for refusing an order to dump garbage illegally.

In order for a public employee to state a claim for First Amendment retaliation, the employee must plead that he: (1) spoke as a citizen on a matter of public concern rather than as an employee on matters of personal interest; (2) suffered an adverse employment action; and (3) the speech was at least a substantial part or motivating factor in the adverse employment action. *See e.g., Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006); *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 3003).

Beginning with the second prong of the analysis, "[i]n the context of a First Amendment retaliation claim, [the Second Circuit has] held that '[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Zelnik*, 464 F.3d 217 at 225-226, *quoting Washington v. County of Rockland*, 373 F.3d 310, 320 (2d. Cir. 2004). It is well settled that "[a]dverse employment actions include discharge." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). *See also Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). As such, plaintiff has clearly alleged he suffered an adverse employment action when his employment was terminated.

With regard to circumstances giving rise to an inference of discrimination, "[a] plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment decision," *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006), through circumstantial evidence such as disparate treatment of similarly situated employees who did not engage in similar speech, or through direct evidence of retaliation. *Gordon*

*v. New York City Board of Educ.*, 232 F.3d 11, 117 (2d Cir. 2000). Here, plaintiff relies the temporal proximity between his complaints and his termination.

Plaintiff alleges that his employment was terminated in November 2010, more than two years after he initially complained to Lundy about disparate treatment on the basis of age and disability in September 2008, 23 months after he began complaining to Lundy in January 2009 on a constant, ongoing basis about allegedly retaliatory conduct, and one month after he verbally refused an order by a supervisor to dump garbage and thereafter complained to Lundy about it. (Dkt. #1 at ¶30). Generally, "[i]f a plaintiff is relying on temporal proximity alone, the temporal relationship between the protected activity and the adverse action must be very close." *Johnson v. Nicholson*, 2007 U.S. Dist. LEXIS 34782 at *18 (E.D.N.Y. 2007). While I find that the approximately two-year lapse between plaintiff's discrimination complaints and his termination is too great to support an inference that they are causally related, the Court assumes *arguendo* that the plaintiff's verbal refusal to dump garbage and his complaints concerning that incident are temporally close enough to his termination the following month to suggest that his termination could have been retaliatory.

Nonetheless, even if some part of plaintiff's "speech" played a role in the decision to terminate his employment, plaintiff's claims of retaliation fall short, because he has failed to plausibly allege that any of the speech in which he engaged involved a matter of public concern. "A matter of public concern is one that relates to any matter of political, social or other concern to the community." *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (internal quotations omitted). Conversely, speech that, although touching on a topic of general importance, primarily concerns an issue that is personal in nature and specific to the employee's own situation, does not address a matter of public concern. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993). As such, "[a] public employee's complaints to his supervisors about discrimination or harassment [against him] typically do not meet the 'public concern' standard." *Brown v. N.Y. State Dep't of Corrs. Servs.*, 583 F. Supp. 2d 404, 412-413 (W.D.N.Y. 2008). "[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the

mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008).

Again, plaintiff alleges that he complained to Lundy on an "ongoing" basis, beginning in November 2008 and continuing from January 2009 through November 2010 – that he was being subjected to age and/or disability-based discrimination and retaliation. After October 2010, he began complaining to Lundy that he'd been asked by a different supervisor to dump garbage in a manner that plaintiff believed was illegal. Plaintiff makes no allegation that he ever complained about discrimination or illegal activities in the general sense, or on a widespread scale: rather, all of his allegations describe complaints that were confined to plaintiff's own, particularized personnel issues, and his belief that he, and he alone, was a victim of discrimination. *See generally Saulpaugh*, 4 F.3d 134 at 143 (although complaints implicating "system wide discrimination . . . unquestionably involve[] a matter of public concern . . . complaints [which are] personal in nature and generally related to [plaintiff's] own situation" do not present matters of public concern). *See also Pedrosa v. City of New York*, 2014 U.S. Dist. LEXIS 3315 at *35 (S.D.N.Y. 2014) (where "each of the complaints lodged by Plaintiff . . . concerned only Plaintiff's own situation and did not hint at broader problems," plaintiff was not speaking on a matter of public concern, and to find otherwise "would constitute an impermissible 'constitutionaliz[ation] of] the employee grievance'"), *quoting Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006).

As such, plaintiff has failed to plausibly allege that he engaged in speech on a matter of public concern. Plaintiff's First Amendment retaliation claim is insufficiently stated, and is dismissed.

### III.   Equal Protections Claims: Age-Based and Disability-Based Discrimination

Plaintiff also claims that he was subjected to disparate treatment and a hostile work environment based on his age and perceived disability, in violation of his right to equal protection under the Fourteenth Amendment, pursuant to Section 1983.[4]

---

[4] Construed liberally, plaintiff's complaint could also be read to attempt to state a claim
(continued...)

### A.    Age and Disability-Based Disparate Treatment

In order to state a discrimination claim under the Equal Protection Clause, plaintiff must allege that he was treated differently from others similarly situated as a result of intentional or purposeful discrimination, based on membership in a protected class. *See Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 280 (N.D.N.Y. 2012); *McIntyre v. Lonwood Cent. Sch. Dist.*, 2008 U.S. Dist. LEXIS 59590 at *34 (E.D.N.Y. 2008). However, "conclusory allegations of disparate treatment or plaintiff's personal opinion that such treatment was motivated by discriminatory intent is not enough to prevail on an equal protection claim." *Hamzik*, 859 F. Supp. 2d 265 at 280 , *citing Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Here, plaintiff has failed to plausibly allege that he was treated differently from others who were similarly situated. A plaintiff alleging a discrimination claim as a violation of equal protection "must plausibly allege the existence of at least one comparator who was more favorably treated despite being 'similarly situated to the plaintiff in all material respects,' meaning the comparator was '(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct.'" *Thompson v. New York City*, 2013 U.S. Dist LEXIS 172993 at *23 (S.D.N.Y. 2013), *quoting Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010). *See also Graham v. long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Here, plaintiff's factual allegations allude to both plaintiff and Walker driving trucks which they were obliged to keep clean, and contends that both were required to follow certain protocols in the event of an equipment failure. However, plaintiff never identifies his own job title or Walker's, and does not allege that they occupied the same rank or position, held the same duties and responsibilities or answered to the same supervisors, or that their performance was evaluated the

---

[4](...continued)
that he was terminated in retaliation for his complaints about age and disability-based discrimination, in violation of the Fourteenth Amendment. However, equal protection "employment discrimination retaliation claims" are not actionable under Section 1983. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1995) ("we know of no court that has recognized a claim under the qual protection clause for retaliation following complaints of . . . discrimination"). *See also Marcotte v. City of Rochester*, 2013 U.S. Dist. LEXIS 75670 at *14 (W.D.N.Y. 2013); *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 392 (S.D.N.Y. 2011).

same way.[5]  *See generally De La Pena v. Metro Life Ins. Co.*, 2013 U.S. Dist. LEXIS 97769 at *50 (E.D.N.Y. 2013) (plaintiff's proffer of comparators is insufficient to survive a Rule 12(b)(6) motion to dismiss, without "enough facts to support the contention that these employees were so similarly situated to the Plaintiff that treating the Plaintiff differently from [them] was sufficient to raise a plausible inference of disparate treatment . . ."). Plaintiff has simply not alleged sufficient facts to support a plausible inference that he and Walker were similarly situated in all material respects. Moreover, plaintiff alleges no facts whatsoever suggesting that the reason he was treated differently from Walker was in any way related to plaintiff's age or perceived disability.  While the standard for alleging a claim of discrimination is not high, a complaint cannot rest on mere legal conclusions, and the Court "cannot infer discrimination from thin air." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

      **B.**      **Age and Disability-Based Hostile Work Environment**

The complaint also purports to state a claim of hostile work environment. In order to prevail on such a claim, a plaintiff must demonstrate that his workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to his employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

Nonetheless, anti-discrimination statutes are not a "general civility code," *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999), and a few isolated incidents of "boorish or offensive use of language" are generally insufficient to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003). *See also Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely

---

[5]  Indeed, plaintiff never identifies his own job title or describes his duties, except to allege that he was "hired by the [City] to work in the Department of Environmental Services." (Dkt. #1 at ¶16).

threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Here, plaintiff alleges no course of conduct so severe, pervasive or consistent as to comprise a hostile work environment, nor do any of the alleged facts render plausible the idea that the treatment of which plaintiff complains (for example, being "ignored" by dispatchers) was motivated by his age or perceived disability. The one discrete act of harassment about which plaintiff complains (Walker repeatedly yelling "suck my dick" at him one day in or around September 2008 (Dkt. #1 at ¶¶23, 24)), while offensive, is also insufficiently severe or consistent to approach the level of a hostile work environment, and in any event falls outside of the three-year statute of limitations under Section 1983.

Plaintiff's hostile work environment claims are therefore dismissed.

**IV.   *Monell* Claim**

To state a claim against a municipality under *Monell v. Department of Social Services*, a plaintiff must allege that an unconstitutional action resulted from an official custom or policy of the municipality, made by its lawmakers or by those whose acts and edicts "may fairly be said to represent official policy." *Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 492-496 (W.D.N.Y. 2011), *aff'd*, 468 Fed. Appx. 39 (2d Cir. 2012), *citing Monell*, 436 U.S. 658 (1978).

Plaintiff generally alleges that the City had a custom, policy, pattern and practice of failing to adequately train its employees and supervisors with respect to employment discrimination law, retaliation, and/or First Amendment rights, and names as individual defendants plaintiff's former supervisor, Lundy, and the DES Commissioner, Holohan.

Initially, having determined that plaintiff has failed to allege a constitutional violation that might trigger municipal liability, the Court is constrained to conclude that plaintiff has failed to state a *Monell* claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("[b]ecause the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [for failure to properly train employees] was entirely

correct"); *Williams v. City of New York*, 2012 U.S. Dist. LEXIS 112482 at *34 (S.D.N.Y. 2012) ("[i]f a plaintiff alleges no constitutional violation, or a district court finds that the plaintiff has inadequately alleged one, the Monell claim fails").

Moreover, insofar as Holohan is named, plaintiff fails to allege any personal involvement or relevant conduct by Holohan. Indeed, plaintiff does not even allege that Holohan was ever aware of the alleged conduct of plaintiff's coworkers towards him, or of plaintiff's complaints of discrimination or retaliation.

Plaintiff's *Monell* claim is therefore insufficiently stated, and is dismissed.

## CONCLUSION

For the reasons stated above, I find that plaintiff's complaint, which is largely a boilerplate recitation of the legal elements for the claims alleged as opposed to a recitation of factual allegations sufficient to support those elements, fails to state a cause of action upon which relief can be granted. Defendants' motion to dismiss (Dkt. #5) is therefore granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 16, 2014.